IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DESTINY RAMIREZ, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Case No. 4:18-CV-2504 |
| | § | |
| ANDREW SAUL,[1] | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM AND ORDER
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Destiny Ramirez ("Plaintiff") filed this suit seeking review of the denial of supplemental security income under Title XVI of the Social Security Act ("the Act"). ECF No. 1.[2] The Parties filed cross-motions for summary judgment. ECF Nos. 9, 10. Based on the briefing and the record, the Court GRANTS Plaintiff's motion and DENIES Defendant Andrew Saul's ("Commissioner") motion.

### I.   BACKGROUND

Plaintiff is a 23-year-old woman who has never worked. R. 52. She graduated from high school at age 16 but has been unable to obtain a job because she became

---

[1] This suit was originally filed against Nancy A. Berryhill, the then-Acting Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Andrew Saul has been automatically substituted as Defendant.

[2] On July 15, 2019, the case was transferred to this Court to conduct all proceedings pursuant to 28 U.S.C. § 636(c). ECF No. 7.

sick with Postural Orthostatic Tachycardia Syndrome ("POTS") in 2013. R. 54-55, 64.[3]

On September 29, 2014, Plaintiff filed an application under Title XVI, seeking benefits beginning on May 20, 2014 based on POTS and her associated symptoms. R. 81, 181.[4] On January 29, 2015, the Commissioner denied her claims under Title XVI. R. 119. Plaintiff requested reconsideration, R. 126, and the Commissioner again denied her claims, R. 130. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). R. 134. ALJ Daniel Whitney conducted a hearing on October 31, 2016. R. 47-80. Cheryl Swisher, a vocational expert ("VE"), testified at the hearing. R. 76-79. Plaintiff also testified. R. 52-76. On December 27, 2016, the ALJ denied Plaintiff's application for benefits under the childhood

---

[3] POTS is a nervous system condition that affects blood flow and circulation. Plaintiff's symptoms include headaches, abdominal pain, muscle pain, fainting, and blood pooling in her legs. R. 292.

[4] Plaintiff filed her application of benefits before she turned 18. Because there are different standards for determining disability for children and adults, there are two relevant time periods in this case: (1) May 20, 2014—Plaintiff's alleged onset date—through October 23, 2014—when Plaintiff was under the age of 18; and (2) October 24, 2014—Plaintiff's 18th birthday—through December 27, 2016—the date of the ALJ's decision. R. 41. The Court will consider medical evidence outside this period to the extent it demonstrates whether Plaintiff was under a disability during the relevant time frame. *See Williams v. Colvin*, 575 F. App'x 350, 354 (5th Cir. 2014); *Loza v. Apfel*, 219 F.3d 378, 396 (5th Cir. 2000).

disability standards[5] and the adult disability standards.[6] R. 20-41.

On January 16, 2017, Plaintiff requested the Appeals Council to review the ALJ's decision. R. 293. On October 13, 2017, the Appeals Council denied Plaintiff's request for review. R. 1-5; *see Sims v. Apfel*, 530 U.S. 103, 106 (2000) (explaining that when the Appeals Council denies the request for review, the ALJ's opinion becomes the final decision).

---

[5] An ALJ must follow three steps in determining whether a child is disabled. 20 C.F.R. § 416.924(a). The ALJ determined Plaintiff was not disabled at Step Three. At Step One, the ALJ found that Plaintiff had never engaged in substantial gainful activity. R. 25. At Step Two, the ALJ found Plaintiff had the following medically determinable and severe impairments: headaches, POTS, depression, and anxiety. R. 25. At Step Three, the ALJ found Plaintiff's impairments or combination of impairments did not rise to the level of severity of impairments in the listings for children associated with POTS (Listing 104.05), headaches (Listing 111.00), and neurological deficits (Listings 111.02 to 111.15 and 111.17 to 111.19). R. 25-26. The ALJ also found Plaintiff did not have an impairment or combination of impairments that functionally equaled the listings because Plaintiff had: (1) no limitation in acquiring and using information; (2) no limitation in attending and completing tasks; (3) no limitation in interacting and relating with others; (4) less than marked limitation in moving about and manipulating objects; (5) no limitation in the ability to care for herself; and (6) less than marked limitation in health and physical well-being. R. 28-32. Therefore, the ALJ found Plaintiff was not disabled before the age of 18. R. 32.

[6] An ALJ must follow five steps in determining whether an adult is disabled. 20 C.F.R. § 416.920(a)(4). The ALJ determined Plaintiff was not disabled at Step Five. At Step One, the ALJ found that Plaintiff has never engaged in substantial gainful activity. R. 25. At Step Two, the ALJ found Plaintiff has the same severe impairments as before she turned 18—namely, headaches, POTS, depression, and anxiety. R. 25, 32. At Step Three, the ALJ found Plaintiff's impairments or combination of impairments do not rise to the level of severity of impairments in the listings for adults associated with POTS (Listing 4.05), headaches (Listing 11.00), neurological deficits (Listings 11.02 to 11.15 and 11.17 to 11.19), and mental impairments (Listings 12.04 and 12.06). R. 36-37. The ALJ found Plaintiff has the Residual Functional Capacity ("RFC") to perform light work, particularly that Plaintiff can lift and carry 20 pounds occasionally and 10 pounds frequently; stand, walk, or sit for six hours in an eight-hour workday; and do simple work at a non-production rate pace. However, Plaintiff cannot climb ropes, ladders, or scaffolds and must avoid hazardous machinery and unprotected heights. R. 38. At Step Four, the ALJ reiterated that Plaintiff had no past work. R. 40. However, at Step Five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform, such as office helper, mail clerk, and file clerk, and therefore Plaintiff is not disabled as defined under the Act. R. 40-41.

On July 13, 2018, Plaintiff filed this civil action. ECF No. 1. In this appeal, Plaintiff asserts that the ALJ erred in determining her residual functional capacity ("RFC").

## II. STANDARD OF REVIEW

The Social Security Act provides for district court review of any final decision of the Commissioner that was made after a hearing in which the claimant was a party. 42 U.S.C. § 405(g). In performing that review:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner …, with or without remanding the cause for a rehearing. The findings of the Commissioner … as to any facts, if supported by substantial evidence, shall be conclusive[.]

*Id*. Judicial review of the Commissioner's decision denying benefits is limited to determining whether that decision is supported by substantial evidence and whether the proper legal standards were applied. *Id*.; *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). It is "more than a scintilla but less than a preponderance." *Id*.[7]

A reviewing court may not reweigh the evidence in the record, nor try the

---

[7] "The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history." *Thornhill v. Colvin*, No. 14-CV-335, 2015 WL 232844, at *3 (N.D. Tex. Jan. 16, 2015) (citing *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)).

issues *de novo*, nor substitute its judgment for that of the Commissioner, even if the evidence preponderates against the Commissioner's decision. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). Even so, judicial review must not be "so obsequious as to be meaningless." *Id*. (quotations omitted). The "substantial evidence" standard is not a rubber stamp for the Commissioner's decision and involves more than a search for evidence supporting the Commissioner's findings. *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985); *Singletary v. Brown*, 798 F.2d 818, 822-23 (5th Cir. 1986). Rather, a reviewing court must scrutinize the record as a whole, taking into account whatever fairly detracts from the substantiality of evidence supporting the Commissioner's findings. *Id*. A court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014).

### III. ANALYSIS OF PLAINTIFF'S CHALLENGES TO THE ALJ'S DECISION

Plaintiff argues the ALJ erred in formulating her RFC by rejecting all medical opinions and independently determining her limitations. ECF No. 9 at 5-7. Commissioner argues the ALJ did not substitute his own opinion for medical opinion, but instead properly interpreted the medical evidence to determine Plaintiff's capacity to work. ECF No. 10 at 5. The Court agrees with Plaintiff.[8]

---

[8] Plaintiff also argues the ALJ erred in evaluating Listings 12.04 and 12.06 for affective disorders and anxiety-related disorders because his analysis was internally inconsistent and not supported

5

**A. The ALJ Independently Determined Plaintiff's RFC Without Relying On Medical Opinion Or Other Objective Evidence Demonstrating Her Work-Related Abilities, and Therefore, His Findings Are Not Supported By Substantial Evidence.**

Before Step Four in the evaluation process, an ALJ must determine a claimant's RFC.[9] 20 C.F.R. § 416.920(a)(4). The RFC determination falls solely on the ALJ, including whether to accept or reject medical opinions on a claimant's ability to perform work-related activities. *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012); *Thornhill v. Colvin*, No. 14-CV-335, 2015 WL 232844, at *10 (N.D. Tex. Jan. 16, 2015). However, the ALJ "may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions." *Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009) (citing *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)); *see Thornhill*, 2015 WL 232844, at *10 ("[An ALJ] cannot . . . independently decide the effects of Plaintiff's mental impairments on her ability to perform work-related activities, . . . even if the ALJ believes he is simply giving Plaintiff the benefit of the doubt[.]"); *Raper v. Colvin*, 262 F. Supp. 3d 415, 422-23 (N.D. Tex. 2017) (collecting cases).[10]

---

by substantial evidence. ECF No. 9 at 3-5. Given that the Court finds remand appropriate, it need not reach these arguments. "Plaintiff may raise any appropriate arguments before the Commissioner on remand." *Littleton*, 2017 WL 1397128, at *9.

[9] "[RFC] is defined as the most that a person can still do despite recognized limitations." *Darrion B. v. Berryhill*, No. 17-CV-2866, 2019 WL 1077333, at *8 (N.D. Tex. Mar. 6, 2019) (citing 20 C.F.R. § 404.1545(a)(1)).

[10] An ALJ "must be careful not to succumb to the temptation to play doctor," as "[l]ay intuitions about medical phenomena are often wrong." *Littleton v. Comm'r of Soc. Sec.*, No. 16-CV-14, 2017

As a result, if an ALJ rejects all opinion evidence in the record, the ALJ must obtain new opinion or otherwise rely on medical evidence that demonstrates how a plaintiff's impairments affect the ability to work. *Fitzpatrick v. Colvin*, No. 15-CV-3202, 2016 WL 1258477, at *7-8 (N.D. Tex. Mar. 31, 2016); *Shugart v. Astrue*, No. 12-CV-1705, 2013 WL 991252, at *5 (N.D. Tex. Mar. 13, 2013). Failure to do so precludes the ALJ's RFC determination from being supported by substantial evidence. *See Connie C. v. Berryhill*, No. 18-CV-169, 2019 WL 2516727, at *7 (N.D. Tex. May 30, 2019), *report and recommendation adopted*, 2019 WL 2515188 (June 18, 2019) (ALJ erred making RFC determination without medical opinions on how impairments impacted Plaintiff's ability to work); *Beachum v. Berryhill*, No. 17-CV-95, 2018 WL 4560214, at *4 (W.D. Tex. Sept. 21, 2018) (ALJ erroneously rejected medical opinions to calculate RFC without citing any supporting medical evidence).

Here, the ALJ determined Plaintiff could perform light work, including the ability to lift or carry 20 pounds occasionally and 10 pounds frequently; stand, sit, and walk for six hours per day; and perform simple work at a non-production rate pace. R. 38. However, Plaintiff could not climb ropes, ladders, or scaffolds and must avoid hazardous machinery and unprotected heights. R. 38. In making this

---

WL 1397128, at *6 (S.D. Tex. Feb. 22, 2017) (quotations omitted) (citing *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003)).

7

determination, the ALJ did not rely on medical opinion about Plaintiff's work-related abilities, obtain new medical opinion evidence, or cite to *any* objective medical evidence in his analysis.

The ALJ rejected all three medical opinions of record, including two opinions from state medical examiners and one from a psychological consultant. The state examiners at the initial and reconsideration levels each performed a physical RFC assessment and made findings similar to the ALJ's RFC determination. R. 90-93, 109-112. For example, both state examiners and the ALJ determined Plaintiff could stand, walk, and sit for six hours per day and carry 20 pounds frequently and 10 pounds occasionally. R. 38, 90, 109-10. However, the ALJ discounted their opinions because they did not rely on up-to-date medical records and because "a different interpretation of the earlier records justifies a [different] conclusion." R. 39. The Court must take the ALJ's reasoning at face value, and thus cannot say the ALJ relied on the state examiners' opinions in formulating the RFC. *Cf. Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision[.]").

The same is true for the opinion of psychological consultant, Pamela McManus ("Dr. McManus"), who performed a psychological evaluation on April 28, 2015. R. 495-99. Dr. McManus found that Plaintiff had "some problems with sustained concentration and persistence in work-related activity at a reasonable

pace" and "may have some problems dealing with normal pressures in a competitive work setting." R. 499.[11] While the ALJ restricted Plaintiff to simple work at a non-production rate pace, he only gave Dr. McManus's opinion "some weight to the extent that it is consistent with the . . . outlined [RFC] assessment." R. 39. In other words, the ALJ used Dr. McManus's report as evidence of his own RFC findings, which is an improper "[substitution of] his own lay analysis for a medical opinion." *Littleton*, 2017 WL 1397128, at *6 .[12] Furthermore, the ALJ did not seek out new expert medical opinion, or consult with a medical examiner at the administrative hearing. The ALJ, therefore, declined to rely on any medical opinion evidence of record.

In fact, the ALJ failed to discuss any medical evidence he *did* accept in formulating Plaintiff's RFC. He summarized Plaintiff's hearing testimony[13] and gave it weight "[t]o the extent [it is] consistent with the objective medical evidence," but makes no mention of what is that objective medical evidence. R. 39. Instead, the ALJ noted that "there is no objective medical evidence to show that the severity [of

---

[11] R. 497-98 (noting Plaintiff was slow in completing tasks in the interview, such as repeating six digits forward and four digits backward).

[12] The ALJ's propensity to "play doctor" and offer his own medical opinion is also clear from the dialogue at the administrative hearing, as described below. *See infra* Section III.C.

[13] Plaintiff testified that she does not leave the house and spends all day in bed. R. 58-62. She also testified that she uses a walker to get around the house, a cane to get out of bed, a shower chair so she does not fall in the shower and ordered a wheelchair due to pain. R. 71-72.

9

Plaintiff's impairments] would prevent her from doing a job that would follow the . . . outlined residual functional capacity assessment." R. 39. The requirement, however, is that there be objective medical evidence supporting the ALJ's determination of what Plaintiff *can* do. *See Fitzpatrick*, 2016 WL 1258477, at *8. The record contains "a vast amount of medical evidence establishing" that Plaintiff has POTS and suffers from several complications as a result. "What the record does not clearly establish is the effect [Plaintiff's] condition had on [her] ability to work." *Ripley*, 67 F.3d at 557. Therefore, evidence demonstrating that Plaintiff can perform light work as outlined in the ALJ's RFC finding is notably absent in this case.

Plaintiff's impairments here are well-documented. She began having headaches and abdominal pain in December of 2013 and was diagnosed with POTS in May of 2014. R. 348. Since then, she has been to dozens of appointments with neurologists,[14] gastroenterologists,[15] cardiologists,[16] rheumatologists,[17] and physical

---

[14] *See, e.g.*, R. 357 (May 20, 2014) (complaining of severe headaches and abdominal pain); R. 388 (Aug. 20, 2014) (reporting feelings of anxiety and depression over her condition); R. 383 (Oct. 1, 2014) (reporting vomiting episode tinged with blood); R. 635 (Apr. 8, 2015) (noting continuation of dizziness, headaches, anxiety, and depression); R. 660 (June 10, 2015) (reporting episode of passing out, hives, nausea, and vomiting); R. 882 (Oct. 28, 2015) (noting Plaintiff can only lay in bed all day and had gained weight).

[15] *See, e.g.*, R. 311 (Jan. 3, 2014) (complaining of abdominal pain, nausea, and vomiting); R. 322 (Feb. 14, 2014) (diagnosing Plaintiff with gastritis, ulcer, and small hiatal hernia); R. 364 (April 8, 2014) (complaining of abdominal pain, nausea, headaches, dizziness, fainting, and chronic pain); R. 455 (Apr. 1, 2015) (complaining of abdominal pain and constipation).

[16] *See, e.g.*, R. 653 (May 4, 2015); R. 764 (Dec. 7, 2015) (complaining of chest pain and rapid heart rate); R. 758 (July 18, 2016) (follow-up); R. 903 (Oct. 17, 2016) (follow-up).

[17] *See, e.g.*, R. 690 (June 3, 2015) (complaining of muscle and joint pain).

therapists.[18] She has even been to the emergency room several times.[19] On her disability application forms, Plaintiff reported that she cannot stand for more than 10 minutes at a time, cannot raise her hands above her head, and cannot drive because she is afraid she will pass out. R. 234-37. Her mother reported Plaintiff spends most of the day in bed and needs significant assistance in doing anything physical. R. 264-71. She has never had any employment. R. 52. Plaintiff's testimony at the administrative hearing was largely consistent with these reports. R. 52-76. Because the ALJ discounted all three medical opinions and the record is otherwise devoid of medical evidence of how Plaintiff's impairments impact her ability to work, the ALJ's determination is not based on substantial evidence. *See, e.g.*, *Williams*, 355 F. App'x at 832 (finding RFC unsupported by substantial evidence where ALJ rejected physicians' opinions and impermissibly relied on his own medical opinion as to plaintiff's work limitations); *McCullough v. Berryhill*, No. 18-CV-128, 2019 WL 1431124, at *14-15 (W.D. Tex. Mar. 29, 2019) (same); *Beachum*, 2018 WL 4560214, at *4 (where the ALJ rejects the only medical opinions, interprets raw data, and comes up with his own RFC, the ALJ commits reversible

---

[18] R. 484-93 (attending physical therapy twice a week in February and March of 2015, until Plaintiff was able to walk more than 20 feet and perform some exercises without increased symptoms); R. 711-24 (attending physical therapy twice a week in October of 2015 and noting Plaintiff complained of pain at 8/10 levels).

[19] *See, e.g.*, R. 368 (Mar. 15, 2014) (experiencing acute abdominal pain, dizziness, and headache); R. 336 (May 1, 2014) (experiencing abdominal pain, nausea, vomiting, and possible dehydration).

error); *Littleton*, 2017 WL 1397128, at *8 (finding RFC unsupported by substantial evidence because ALJ rejected medical opinion, failed to order a mental examination of plaintiff, and did not call medical expert to testify at the hearing, and noting that "Fifth Circuit law does not permit such an unsupported assessment"); *Fitzpatrick*, 2016 WL 1258477, at *8 (finding RFC unsupported by substantial evidence where ALJ rejected medical opinion and the record lacked medical evidence that plaintiff could perform the work outlined in the RFC); *Thornhill*, 2015 WL 232844, at *10 (RFC is not supported by substantial evidence where ALJ rejected any medical opinion evidence regarding the effect of the impairments on plaintiff's ability to work).[20] Therefore, the case must be remanded.

**B. On Remand, The Case Should Be Assigned To A Different ALJ.**

Section 405(g) of the Act "grants courts wide discretion to dispose of matters 'with or without remanding the cause for a rehearing.'" *Bordelon v. Barnhart*, 161 F. App'x 348, 352 n.12 (5th Cir. 2005) (quoting 42 U.S.C. § 405(g)). In ordering a

---

[20] "'Procedural perfection in administrative proceedings is not required,' and a court 'will not vacate a judgment unless the substantial rights of a party have been affected.'" Fitzpatrick, 2016 WL 1258477, at *8 (quoting Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988)). Some courts, therefore, require a plaintiff to demonstrate prejudice resulting from an ALJ's use of an unsupported RFC determination. *See, e.g., Connie C.*, 2019 WL 2516727, at *7; *Fitzpatrick*, 2016 WL 1258477, at *8. *But see,* Williams, 355 F. App'x at 832 (Fifth Circuit reversed without requiring prejudice showing, finding RFC was not based on substantial evidence where ALJ rejected treating physicians' opinions and relied on his own analysis of medical conditions). Plaintiff was prejudiced by the ALJ's error, and the case must be remanded. *See, e.g.*, *Fitzpatrick*, 2016 WL 1258477, at *8 (finding prejudice where there was evidence plaintiff suffered impairment that could have affected his ability to work).

12

case remanded to the Commissioner, it is within the reviewing court's discretion whether to also require that the case be assigned to a different ALJ. *See id.* n.12; *Davis v. Apfel*, 234 F.3d 706 (5th Cir. 2000). While the Fifth Circuit has not formulated a test to guide this decision in cases involving remand to the Commissioner, the Court takes guidance from cases in which the Fifth Circuit has considered whether to reassign a case to a different district judge on remand. In those cases, the Fifth Circuit applies two tests. *Latiolais v. Cravins*, 574 F. App'x 429, 436 (5th Cir. 2014). Under the "more stringent" test, if there is no evidence that the district judge had a personal bias, the remand decision turns on consideration of the following three factors:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*Id.* Under the "more lenient" test, reassignment is appropriate when "the facts might reasonably cause an objective observer to question the original judge's impartiality." *Id.* at 436-37 (quotations and alterations omitted).

Both tests are consistent with pertinent regulations of the Social Security Administration and the importance of ensuring a fair hearing before an ALJ. *See* 20 C.F.R. § 404.940 ("An administrative law judge shall not conduct a hearing if he or

13

she is prejudiced or partial with respect to any party[.]"); *Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995) (recognizing that "[t]he right to an unbiased ALJ is particularly important because of the active role played by ALJs in social security cases").

Having reviewed the record in this case, the Court is satisfied that, even under the "more stringent" test, this case must be reassigned to a different ALJ on remand. There were several exchanges between the ALJ and Plaintiff during the administrative hearing that, at best, can be characterized as giving improper medical opinion and, at worst, as blaming Plaintiff's symptoms on her own behavior:

**Plaintiff:** When I first got sick, I started passing out, dizziness, nausea. I could barely get out of bed. Anything that I had ate made me sick.

**ALJ:** So, but you may—have been able to maintain your weight.

**Plaintiff:** I was 120 pounds—

**ALJ:** Yeah. So, so you're able to keep something down.

**Plaintiff:** Well, I mean I was 120 pounds at the time. I had got down to 111. They put me on—

**ALJ:** To 111?

**Plaintiff:** 111 pounds, yes. They put me on depression medicine and Lyrica for pain, and it made me gain over 40 pounds. That's why I am this weight.

**ALJ:** But you don't gain weight unless you're eating.

| **Plaintiff:** | I mean I can hardly eat. I gained weight from the medicine that they put me on. |
|---|---|
| **ALJ:** | Well, unless you're taking 40 pounds of medicine, you're, you're, you're not gain[ing] weight unless you're actually taking something in. You understand that, right? |

R. 54-55. Similarly, in response to Plaintiff's complaints of pain, the ALJ stated, "Well, if you lay in bed . . . 20 hours every day, you, you're going to have body aches because . . . your body requires you to get up and move around." R.71-72. In response to Plaintiff's description of blood pooling in her legs, the ALJ stated, "You know the normal mechanism for getting blood out of your legs; walking around?" R. 65.

There are other exchanges that appear, from a reading of the transcript, to be argumentative on the part of the ALJ:

| **Plaintiff:** | I don't leave the house. I, I can't really do anything for myself. I can't cook. |
|---|---|
| **ALJ:** | Anything? |
| **Plaintiff:** | I can't cook for myself. I mean— |
| **ALJ:** | Can you go to the bathroom by yourself? |
| **Plaintiff:** | Yes. |
| **ALJ:** | Can you take a shower by yourself? |
| **Plaintiff:** | I have to use a shower chair most of the time. |
| **ALJ:** | Okay. But you, but you can take a shower by yourself? |

15

| | |
|---|---|
| **Plaintiff:** | Yes. |
| **ALJ:** | Okay. And, dress yourself? |
| **Plaintiff:** | Yes. |
| **ALJ:** | Okay. You can eat? When, when you sit down and eat— |
| **Plaintiff:** | I can— |
| **ALJ:** | —you can eat yourself? |
| **Plaintiff:** | Yes. |
| **ALJ:** | Okay. There's a lot, a lot of things you can do for yourself? |
| **Plaintiff:** | Yeah. |
| **ALJ:** | Okay. So, when you say there's nothing you can do for yourself, that's not really true. |

R. 58-59. Similarly, in response to Plaintiff's explanation of why she took an online course to graduate early from high school, the ALJ stated, "So, problem[s] no matter where you went?" R. 60.

Even under the strict standards, it would be inappropriate for the same ALJ to hear the case on remand. First, the exchanges described above are corrosive to the appearance of justice. A disability benefits hearing is not the place for an ALJ to assign blame to a claimant for her condition or make argumentative comments about her abilities, especially given the tremendous impact that a denial of benefits is likely

16

to have on the claimant's livelihood. *See Mathews v. Eldridge*, 424 U.S. 319, 342 (1976) (recognizing that because of "the typically modest resources of the family unit of the physically disabled worker, the hardship imposed upon the erroneously terminated disability recipient may be significant"). Second, the Court has serious doubts as to whether the ALJ can be expected to change his approach upon remand, given the number of problematic exchanges that occurred at the first hearing. Third, any duplication in effort would not be out of proportion to the benefits of ensuring a process that is fair in both appearance and fact.

Therefore, the case must be assigned to a different ALJ upon remand. *See, e.g.*, *Christian v. Berryhill*, No. 15-CV-3714, 2017 WL 1134152, at *13-15 (S.D. Tex. Mar. 27, 2017) (directing Commissioner to assign case to different ALJ on remand due to the ALJ's inappropriate comments on plaintiff's weight); *Alfred v. U.S. Comm'r Soc. Sec. Admin.*, No. 14-CV-3436, 2015 WL 8484305, at *3 (W.D. La. Dec. 8, 2015) (finding it appropriate to remand the case to a different ALJ when hearing testimony demonstrated animosity between the ALJ and plaintiff's attorney); *Embry v. Barnhart*, No. 02-CV-3821, 2003 WL 21704425, at *1, 13 (N.D. Ill. July 18, 2003) (finding reassignment appropriate where ALJ "appeared to mock [p]laintiff, belittle his impairments, and . . . dispense medical advice") (citations omitted).

## IV. CONCLUSION

Therefore, the Court GRANTS Plaintiff's motion for summary judgment, ECF No. 9, and DENIES Commissioner's motion for summary judgment, ECF No. 10. The Commissioner's determination that the Plaintiff is not disabled is VACATED. The case is REMANDED to the Commissioner, who shall assign the case to a different ALJ for reevaluation of Plaintiff's claims consistent with this opinion.

Signed at Houston, Texas, on April 12, 2020.

_____
**Dena Hanovice Palermo
United States Magistrate Judge**